FILED
2008 Mar-31  PM 05:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **LINDA MAYHEW** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | **4:07-CV-1603-UWC** |
| **MICHAEL J. ASTRUE**, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Linda Mayhew ("Plaintiff") brings this action for disability insurance benefits pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This Court finds the Administrative Law Judge ("ALJ") did not fully develop the record. Therefore, for the reasons elaborated herein, the Court will **REMAND** the decision denying benefits to the ALR for further consideration.

1

## I.  Procedural History

Plaintiff filed an application for disability insurance benefits on December 23, 2004, alleging disability beginning on December 20, 1995.  (R. 43.)  Plaintiff was last insured for disability benefits on December 31, 1995. (R. 54.) This application was denied by the State Agency on February 16, 2005, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on March 1, 2005.  The ALJ denied benefits on December 1, 2006 and the Appeals Council declined review July 6, 2007.  Having timely pursued and exhausted her administrative remedies, Plaintiff filed an action for judicial review in federal district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) on September 4, 2007.

## II.  Factual Background

At the time of the hearing, Plaintiff testified that she was sixty years old and has fourteen years of education.  She has not worked at the substantial gainful activity level since the alleged onset date of December 20, 1995.  The vocational expert classified the plaintiff's past relevant work experience as an office worker for a trucking company as being performed at the semi-skilled to low-skilled level and sedentary in exertional nature.

Plaintiff alleges disability due to a major depressive disorder and failed back

2

syndrome injury.  She testified that she was first diagnosed with major depression in 1977 (R. 501).  At the hearing, both Plaintiff and her husband testified that she had been in psychiatric treatment prior to the date last insured.  (R. 469.)  They further testified that Plaintiff's depression became much worse when their trucking business began to fail in early 1994.  (R. 469.)  Accordingly, Mr. Mayhew testified that, in order to save their trucking business, he decided to attempt to train Plaintiff as a long haul truck driver.  (R. 169.)  However, Mr. Mayhew testified that, while enrolled in the trucking licensing program, Plaintiff had been expelled from the training due to severe anxiety and depression.  Mr. Mayhew further testified that she was under the care of a psychiatrist in California at the time.

Plaintiff subsequently developed chronic back pain, with the back pain and depression worsening in 1994 and 1995 to the extent that she was unable to perform any type of work.  She subsequently developed suicidal ideation.  (R. 501-516.)  Mrs. Mayhew noted that in 1994-1995, her depression became so severe that, while traveling with her husband in his eighteen-wheeler, she frequently became so depressed that she would close herself off in the sleeper compartment for days on end.  She further testified that she had on two occasions attempted suicide by overdose of prescribed medications.  (R. 470.)  Mr. Mayhew endorsed all of these symptoms and noted that on many occasions he "couldn't

even drag her out of the truck." (R. 470.)  As a result, he noted, Plaintiff was capable of doing only a minimal amount of work, making it necessary for him to actually hire someone else to handle the duties she was supposed to complete.  (R. 470.)

Plaintiff was a resident of California prior to the year 2000.  According to Plaintiff, despite numerous attempts to locate medical records from her time in California, she was unable to do so because "some had been purged and others had been lost following the death or relocation of Plaintiff's then-treating physicians." (Pl.'s Br. 4.)  Accordingly, the primary question before the ALJ was whether Plaintiff was under a disability during this time, specifically in 1995, when her medical records were unable to be located.

**A**.  **Treatment History**

Plaintiff claims to have suffered from serious psychological problems from as early as the late 1970s and from total disability due to major depression and failed back syndrome since 1995.  However medical evidence is not available prior to 1999. Beginning in January of 1999 and continuing through the present, however, her medical records are incredibly voluminous.  Accordingly, the following treatment history briefly outlines Plaintiff's documented complaints and treatment from 1999 to the present.

4

In January 1999, Plaintiff was hospitalized at Desert Regional Medical Center for low back pain with radiculopathy.  During this visit, plaintiff underwent a lumbar fusion.  (R. 18.)  Additionally, during this visit, Dr. John Thompson noted that Plaintiff has a "history of chronic anxiety."  (R. 105.)

On December 14, 1999, Plaintiff was brought to Desert Regional by an ambulance.  She presented to Dr. Thompson complaining of low back pain that was radiating down her left leg.  During this visit, Dr. Thompson noted that she was currently on the following medications: Zoloft (for depression), Dilacor (for chest pain), Lozol (for hypertension), Premarin (for menopause and osteoporosis), Xanax (for anxiety and depression), and Lescol (for heart disease).  He further prescribed her Vicodin for her lower back pain.  (R. 125.)

After a period of "severe, intractable back pain," Plaintiff presented to UCLA Healthcare for surgery to correct a failed lumbar fusion from earlier in the year and for degenerative disc disease.  (R. 127.)  On September 14, 2000, Dr. Duncan McBride performed an anterior lumbar interbody fusion on L4-5 and L5-S1.  Plaintiff was discharged on September 20, 2000.  Dr. McBride arranged for outpatient physical therapy and arranged a follow up appointment within one to two weeks.  (R. 130.)

On May 2, 2002, Plaintiff was hospitalized at the Marshall Medical Center

North in Guntersville, Alabama after a suicide attempt in which she consumed ten 200mg Trazodone tablets and ten 300mg Neurontin tablets.  Dr. Craig Young described her past medical history as significant for anxiety, depression, and chronic back pain.  The following day, Dr. Charles McInteer diagnosed her with major depressive disorder and severe and recurrent anxiety.  He continued her on her psychiatric and psychotropic medications.  (R. 180.)

On July 25, 2002, Plaintiff was admitted for intrathecal catheter placement for treatment of her lower back and hips.  After noting that Plaintiff's history indicated chronic back pain, Dr. Morris Scherlis explained the risks of the procedure to Plaintiff and performed the surgery. (R. 134.)

On April 4, 2003, Plaintiff underwent a polysomnogram (sleep study) at the Alabama Sleep Clinic by Dr. William Confer . (R. 173.)  She was diagnosed, under subtitle "Axis A", with severe obstructive sleep apnea.  Under subtitle Axis C, Dr. Confer gave a diagnostic impression of major depression and degenerative disc disease. (R. 174.)

On November 18, 2004, Plaintiff was seen at Sand Mountain Psychiatry and Counseling Center.  After at least six prior visits to the center, she was again diagnosed with Axis I Major Depressive Disorder and continued on her medications.  On March 17, 2005, Dr. Charles McInteer performed a residual

6

functional capacity exam on Plaintiff.  In doing so, he noted an extreme degree of difficulty in maintaining social functioning.  He also included a handwritten note which stated, "patient severely impaired in overall concentration."  In his Sand Mountain Psychiatry Progress Note, Dr. McInteer opined that patient was suffering not only from Major Depressive Disorder but also from a dementing process that leaves her without cognitive function ability.  He noted that in his judgment her condition would only get worse and that no degree of antidepressant medication will help her with her declining memory, cognition, and ADL capacity. (R. 293.)

## B.  ALJ's Decision.

The ALJ rendered an adverse decision on Plaintiff's claim on December 1, 2006.  He opined that there was simply insufficient evidence that claimant had an impairment or combination that produce more than a minimal effect on her ability to perform work activities **prior to December 31, 1995.**  Therefore, the claimant did not have a severe impairment prior to December 31, 1995.  The ALJ noted that claimant testified that she had experienced severe depression and anxiety since 1995; however, he stated that a physical or mental impairment must be established by objective medical evidence, which in this case is lacking. (R. 18.)

In his discussion, the ALJ opined that claimant was not fully credible in her

7

claim of ongoing, disabling symptoms from failed back syndrome and major depressive disorder.  Specifically, the ALJ noted that there was no report on the record that Plaintiff had experienced severe depression since 1995 until she presented on March 17, 2005 for Dr. McInteer to complete a medical source opinion on her ability to perform basic work activities.  The ALJ further pointed to the fact that Dr. McInteer himself labeled Plaintiff as an unreliable historian. Lastly, the ALJ disbelieved Plaintiff's testimony that her depression was of such severity that she had frequent suicidal ideation and even attempted suicide on one occasion in 1995 and yet was able to hide the severity of the symptoms from her husband, who was living with her inside a truck cab at the time.  (R. 18.)

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

8

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d

9

1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, in SSR § 83-20, the Social Security Administration provides guidance on how to determine the date of onset of a disability of nontraumatic origin.  It states that the date alleged by the individual should be used if it is consistent with all the evidence available.  SSR 83-20, at 3.  When precise evidence is not available, however, the need for inferences arises.  Indeed, it may be possible "to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination." *Id.*  It further states that

How long the disease may be determined to have existed at a

disabling level depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, **the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.**

*Id.* at 3 (emphasis added).  The Ruling goes on to list several forms of evidence that may be considered to determine the onset date of disabilities of nontraumatic origin, including claimant's testimony, work history, family members, friends, and former employers.

Moreover, Social Security proceedings are inquisitorial rather than adversarial; and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 120 (2000).  Indeed, the ALJ has a basic duty to fully develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11 th Cir. 1981)

## IV.  Analysis

Although the ALJ provided an explanation of Plaintiff's treatment history (or lack thereof, for the pertinent time period), this Court must remand the Commissioner's denial of Plaintiff's benefits because the ALJ failed to engage the services of a medical advisor in inferring the onset date of Plaintiff's severe impairments.

The Plaintiff's date last insured (DLI) for purposes of a period of disability

and Disability Insurance Benefits ("DIB") is December 31, 1995.  It is Plaintiff's burden to show that she became disabled on or prior to that date.  *See* 42 U.S.C. §§ 423(a) and (c); *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981).  However, the ALJ's failure to call on the services of a medical advisor when Plaintiff's onset date obviously must be inferred runs afoul of SSR 83-20.

Because of the lack of medical records dating back to Plaintiff's date last insured, SSR § 83-20 provides guidance on how to determine the date of onset of a disability of nontraumatic origin.  As noted above, the ALJ should do two things: (1) call on the services of a medical advisor, and (2) consider claimant's testimony, work history, and testimony of family members, friends, and former employers.   First, the ALJ clearly failed to consult a medical advisor.  Second, although the ALJ did ask questions of Plaintiff's husband during Plaintiff's testimony (R. 517), he failed to mention anything about said testimony in his decision.  He only mentioned that Plaintiff's testimony was not credible.  (R. 18.) Accordingly, this Court must assume that the ALJ found Mr. Mayhew's testimony, which outlined in detail the devastating effects of Plaintiff's depression in 1994 and 1995, to be entirely credible.

In an unpublished per curiam opinion, the Eleventh Circuit held that, under SSR 83-20, an ALJ is required to consult a medical examiner to determine the

12

onset date even before a disability finding is made.  *See Stanley March v.*

*Massanari*, No. 00-16577, slip op. (11th Cir. July 10, 2001).  Thus, the onus is on

the ALJ to consult a medical examiner when lack of medical records require

inference as to onset date.  The Commissioner contends this case can be

distinguished from the instant facts because (1) Plaintiff has not asserted that the

ALJ should have consulted a medical advisor, and (2) the *March* Court relied

upon treating physician evidence indicating March was actually disabled.  As to its

second point, the Commissioner contends that, in the instant case, treating

physician Dr. McInteer's opinions were rendered almost eleven years after

Plaintiff's DLI and, therefore cannot be relied upon.

There is no question that the evidence of Plaintiff's major depression,

anxiety, and lower back problems is voluminous beginning in January 1999 to the

present.  Therefore, a medical advisor would have been not only appropriate under

the law but helpful to the ALJ in his determination of whether Dr. McInteer's

admittedly late-coming opinions should be entitled to weight and whether

Plaintiff's testimony is, in fact, incredible or not.  It would have also been helpful

in determining the credibility of her husband's testimony, which under SSR 83-20

would serve as testimony of both a former employer and a family member.

Accordingly, this Court need not reach whether the medical evidence of

record actually entitles Plaintiff to DIB because it agrees with the Commissioner that a "reviewing court may not reweigh the evidence." *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11 th Cir. 1990).  However, it is under a continuing duty to ensure that the ALJ fully and fairly developed the record.

## V.  CONCLUSION

Therefore, by separate order, the decision denying benefits will be remanded in order for the ALJ to engage the services of a medical advisor in inferring the onset date of Plaintiff's severe impairments.

Done the 31st day of March, 2008.

U.W. Clemon
United States District Judge

14